UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:11-cv-21396

SOLUTION Z, on behalf of itself and all
others similarly situated,

                Plaintiffs,

vs.                                          CLASS REPRESENTATION

ALMA LASERS, INC., a Delaware
corporation,
                Defendant.

_____

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, SOLUTION Z ("Plaintiff" or "SOLUTION Z"), on behalf of itself and all others similarly situated, by and through its undersigned counsel and pursuant to this Court's Order dated January 25, 2012 (D.E. 35) and Fed.R.Civ.P. Rule 23, file this Amended Class Action Complaint against Defendant, ALMA LASERS, INC. ("ALMA LASERS" or "Defendant"), and sets forth as grounds to the Amended Class Action Complaint the following:

### Introduction

1. On behalf of itself and the proposed Class, Plaintiff asserts four counts: (1) a violation of the Florida Deceptive and Unfair Trade Practice Act, (2) a false advertising claim, (3) a fraud/misrepresentation in tort claim, (4) a misrepresentation/breach of contract claim, (5) a breach of express warranty claim, (6) a claim of breach of implied warranty of merchantability, and (7) a claim for breach of implied warranty of fitness for a particular purpose. These claims arise out of Defendant's design and marketing tactics of its Accent XL machine to Plaintiff and to the members of the proposed Class, all of whom are consumers of the Accent XL machine.

1

CASE NO. 1:11-cv-21396

**Jurisdiction and Venue**

2.  This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff and all members of the proposed Class, as defined below, are residents and citizens of various cities in the State of Florida.

3.  The damages suffered and sought to be recovered total, in the aggregate, in excess of One Million Dollars ($1,000,000.00), exclusive of attorney's fees, costs and interest.

4.  Plaintiff and the proposed Class members are "Consumers" as defined by Section 501.203(7), Fla. Stat. These consumers are all, or substantially all, medical doctors who live and practice in the State of Florida.[1] Specifically, Plaintiff and the proposed Class members are medical cosmetic laser, implant, plastic surgery, cosmetic dentistry, and/or cosmetic dermatology practices or are individuals employed by such practices, who have purchased the Accent XL machine.  Plaintiff has standing to bring this action against ALMA LASERS since it is a consumer as defined by FDUPTA.

5.  At all relevant times hereto, ALMA LASERS was and is a Delaware corporation with its principal address in Buffalo Grove, Illinois, but has offices all over the United States and elsewhere, including an office in Fort Lauderdale, Florida and a registered agent in Plantation, Florida. Moreover, ALMA LASERS is authorized to conduct business in the State of Florida and throughout the United States through its agents and/or employees.

6.  This Court has jurisdiction based on diversity of citizenship pursuant to 28. U.S. C. §1332. At this time, Plaintiff and all members of the proposed Class are residents and citizens of Florida. Defendant ALMA LASERS is a Delaware corporation with its

---

[1] If necessary, Plaintiff will expand the definition of the Class to include consumers of the Accent XL machine nationwide.

CASE NO. 1:11-cv-21396

principal place of business in Illinois. Additionally, as set forth above, the amount in controversy exceeds $75,000.00.

7. Venue is proper pursuant to 28 U.S.C.A §1391(b)(2), because a substantial part of the events that give rise to the claims herein occurred in Florida. Specifically, jurisdiction is proper because, all relevant times hereto, ALMA LASERS sold its products in interstate commerce and intended to sell the Accent XL to markets all over the United States, including in Florida, and further, ALMA LASERS has an office and registered agent in Florida. As such, ALMA LASERS conducted business in Florida, and further, ALMA LASERS was engaged in solicitation of its products in Florida, its products were consumed and used in Florida in the ordinary course of commerce, trade or use, and ALMA LASERS' machine caused damages to persons and property within Florida. The transactions, acts and occurrences that give rise to this action occurred and/or accrued, among other places, in Miami-Dade County, Florida, and ALMA LASERS' wrongful conduct occurred in, among other places, Miami-Dade County, Florida.

8. Additionally, in a diversity action, a federal district court must apply the choice-of-law rules of the state in which the court sits. *Forzley v. AVCO*, 826 F.2d 974, 978-9 (11th Cir. 1987) (citing *Klaxon v. Stentor Mfg.*, 313 U.S. 487 (1941)); *Metric Sys. v. McDonnell Douglas*, 850 F.Supp. 1568, 1578 (N.D.Fla. 1994). As such, Florida's choice-of-law rules apply in this case without argument.

9. Under Florida law, the law chosen in a contract applies only if there is a reasonable relationship between the contract and the state whose law is selected and if the chosen law does not conflict with Florida law or confers an advantage on a nonresident party which a Florida resident lacks. *Forzley*, 826 F.2d at 978-9; *Metric*, 850 F.Supp. at 1578.

CASE NO. 1:11-cv-21396

Florida utilizes the "most significant relationship" test to determine which state's law applies to tort claims. *Burger King v. Austin*, 805 F.Supp. 1007, 1012 (S.D. Fla. 1992); *Garcia v. Public Health*, 841 F.2d 1062, 1064-5 (11th Cir. 1992); *Fl. Evergreen Foliage v. E.I. Du Pont De Nemours & Co.*, 135 F.Supp.2d 1271, 1278 (S.D. Fla. 2001) (since Plaintiffs are all Florida corporations or individual citizens, the lawsuit originated in Florida, and the cause of action occurred in Florida, that Florida therefore has the most significant relationship to the claims, thus, the court should apply Florida law to the Plaintiffs' claims). This case, like *Fl. Evergreen*, involves Plaintiff and proposed Class Members that are all Florida citizens, the lawsuit originated in Florida, and the causes of action occurred in Florida.

10. In addition, when the matter involves a tort or fraud, the choice-of-law provision in a contract does not apply, and the matter shall instead be decided according to the law of the state in which the court sits. *Austin*, 805 F.Supp. at 1012 (claims arising in tort are not controlled by contractual choice-of-law provisions, but are decided according to the law of the forum state); *Maxcess v. Lucent Tech.*, 433 F.3d 1337, 1340-41 (11th Cir. 2005) (the fraudulent-inducement, statutory fraud and tort claims are governed by Florida law despite the contract that stated "[t]he construction and interpretation of, and the rights and obligations of the parties pursuant to this Agreement, shall be governed by the laws of the State of New York").

11. Also, courts have held that the choice-of-law provision will not be enforced if the chosen law contravenes strong public policy or if doing so would be unjust or unreasonable. *Default Proof Credit Card Sys. v. Friedland*, 992 So.2d 442, 444 (Fla. 3d DCA 2008); *Maxcess*, 433 F.3d at 1340-41. The freedom of the right to contract is limited by public

4

CASE NO. 1:11-cv-21396

policy concerns, and a contract is void if it contravenes established interests of society or has a tendency to be injurious to public welfare. *Coastal Caisson Drill Co. v. Am. Casualty Co. of Reading, P.A.*, 523 So.2d 791, 793 (Fla. 2d DCA 1988). Here, the claims that Plaintiff asserts in connection with its breach of contract claim (particularly the violations of FDUPTA, fraud, false advertising, and misrepresentation) were designed to afford broad protection to all citizens of the state of Florida as well as protection to the individual asserting these claims. Fla.Stat. §501.204; *Am. Online v. Pasieka*, 870 So.2d 170, 171 (Fla. 1st DCA 2007) (the court held that the FDUPTA claim was not subject to the forum selection clause of a contract because it would undermine the effectiveness and purpose of the statute); *Holt v. O'Brien Imports of Ft. Myers*, 862 So.2d 87, 89 (Fla. 2d DCA 2003) (any attempt to limit liability under FDUPTA is contrary to public policy). As such, for all of the reasons set forth above, the choice-of-law provision of the contract is void, and Florida law should apply to all of the claims in this Amended Class Action Complaint.

12. Plaintiff has retained the undersigned counsel and is obligated to pay said counsel a reasonable fee for services rendered herein. Said attorneys fees and costs are awardable pursuant to §501.2105, Fla. Stat., and the rules related to class actions.

## **General Allegations**

13. Plaintiff re-alleges and reaffirms paragraphs 1 through 12 as if fully set forth herein.

14. Defendant ALMA LASERS is a global developer, manufacturer, and provider of laser, light-based and radiofrequency devices for aesthetic and medical applications.

15. Defendant ALMA LASERS in the course of engaging in a for-profit business, designed, developed, manufactured, and provided the Accent XL machine.

CASE NO. 1:11-cv-21396

16. Prior to Defendant manufacturing the Accent XL machine, the means used to tighten and firm the skin required surgery or other invasive procedures.

17. Defendant ALMA LASERS marketed its Accent XL as the first non-invasive procedure on the market that was designed to tighten the skin by using heat to create collagen. (Exhibit "A").

18. Defendant ALMA LASERS designed, delivered, marketed and/or sold the Accent XL machine with the knowledge that the machine would be used on people to tighten and firm their skin and produce more collagen through heat and radio frequency.

19. ALMA LASERS' representatives are paid by ALMA LASERS to sell the machine and these representatives imply that the machine will produce significant results in an attempt to sell the machine.

20. Upon information and belief, at all times relevant herein, individuals by the names of Ron Broadway, Karen Locascio, Dr. Farbstein, and Dr. Macrene Alexiades-Armenakas are representatives employed by ALMA LASERS and/or were paid by ALMA LASERS to market, endorse, and/or sell the Accent XL machine to consumers.

21. From approximately January 2007 through December 2008, Defendant ALMA LASERS advertised and represented to its consumers, through its representatives, paid endorsers, and through written materials, that the Accent XL would tighten and firm the skin, produce collagen through heat and radio frequency, and produce certain advertised and stated results. (Exhibits "A" through "G").

22. Specifically, Ron Broadway, a representative employee of ALMA LASERS at all material times herein made oral statements to Plaintiff and other consumers matter-of-factly stating that the Accent XL machine will show vast permanent improvements in the

6

CASE NO. 1:11-cv-21396

skin by only one or two treatments using non-invasive heat treatments and that it has proven to be effective with thousands of patients, and further, that the consumers of the Accent XL machine are expected to have a specified amount of profit.

23. Also, Dr. Macrene Alexiades-Armenakas, a doctor who upon information and belief, was paid by ALMA LASERS to endorse the Accent XL machine and speak at various seminars from approximately January 2007 through December 2008 regarding the Accent XL machine's efficacy and remarkable results it produces.

24. In addition, Defendant's advertisements and marketing materials consisted of brochures, before and after pictures after only a few treatments, manuals, seminars, statements by Defendant's representatives, statements made by Defendant's representatives or paid endorsers, and statements contained on Defendant's website, such as: "This revolutionary skin tightening regimen uses advanced radio frequency (RF) technology to treat wrinkles non-invasively. Multiple clinical studies and thousands of satisfied patients have proved the **Accent Your Body** treatment's effectiveness in tightening loose skin, promoting healthy collagen production and improving body contours. Compared to other skin treatment systems, you'll see *noticeable results faster*;" "just one or two treatments can produce good results;" "steady improvement with excellent, long-term skin tightening results;" "no more than three to five treatments at two week intervals required;" "skin to tighten right away, results are immediately visible;" "15 days post treatment (5 weeks/2x/wk). The thickness of the patient's superficial fat has decreased 33 percent and there is a clear demarcation from the deep fat;" "the proforma uses of conservative annual growth rate of: 6%;" etc. Additionally, consumers are provided with before and after pictures, including before and after pictures after just one treatment by the Accent XL

CASE NO. 1:11-cv-21396

machine, which suggested remarkable differences.  These pictures are also on ALMA

LASERS' website. (See Exhibits "A" through "G" for some of such advertisements and

marketing materials).

25. Moreover, Defendant provided its consumers with certain projections of the supposed

income derived from the use of the Accent XL, and these projections illustrate the

machine's overhead being met or exceeded by the profits it will bring to consumers.

(Exhibit "H").

26. Understandably, due to ALMA LASERS' attempt to design the Accent XL machine as

being the first non-invasive procedure to tighten and firm skin, ALMA LASERS'

extensive advertising of the Accent XL machine's remarkable results with expectations

that the machine will produce the same results as advertised when using the machine on

their own patients, and due to the projected income provided to Plaintiff and the proposed

Class members, the Plaintiff and the Class members purchased the Accent XL machine.

Plaintiff and the proposed Class members each purchased the Accent XL machine from

approximately January 2007 through December 2008 for approximately One Hundred

and Nine Thousand Seven Hundred Dollars ($109,700.00) up to One Hundred and Thirty

Thousand Dollars ($130,000.00). (See Contract and one such Invoice dated April 2, 2008

attached hereto as Exhibits "I" and "J").

27. However, the Accent XL machine procured by ALMA LASERS does not perform as

intended or as the sales representatives' advertisements and other written materials that

were provided to Plaintiff and Class members led the consumers and users to believe. In

fact, the Accent XL machine, as it is designed and built, is scientifically incapable of

delivering these results and performing the remedies described. Neither the Plaintiff nor

CASE NO. 1:11-cv-21396

the members of the proposed Class have seen any of the noticeable results that ALMA LASERS promised to its consumers, nor could they possible receive such results that ALMA LASERS intended in its design of the Accent XL machine.

28. Moreover, Plaintiff's contract with ALMA LASERS provides that upon request, Plaintiff can review the clinical studies that have been done on the Accent XL machine. (Exhibit J").

29. On or about April 28, 2010, after being dissatisfied with the Accent XL machine's results after numerous treatments on the same patients and after noticing a huge difference between what ALMA LASERS advertised and what Plaintiff believed the efficacy of the treatment was supposed to be and what it in fact was, Plaintiff exercised its contractual right with ALMA LASERS and requested to look at ALMA LASERS' clinical studies and results of the Accent XL machine.

30. Upon information and belief, on May 6, 2010, Plaintiff received a call from a representative from ALMA LASERS, Karen Locascio, who informed Plaintiff that she is unable to send the requested documents and clinical studies of the machine as the Contract provided. *See id.*

31. Again, upon information and belief, on May 6, 2010, Plaintiff sent a letter to Dr. Farbstein, another representative from ALMA LASERS, making a second request to examine the clinical studies of the Accent XL machine.

32. As a result of patient dissatisfaction with the Accent XL machine for not delivering the results ALMA LASERS intended in its design and for which ALMA LASERS promoted and continues to promote, Plaintiff has given refunds for treatment, lost patients, and damaged its reputation in the cosmetic laser industry.

CASE NO. 1:11-cv-21396

**Class Representation Allegations**

33. Plaintiff re-alleges and reaffirms paragraphs 1 through 32 as if fully set forth herein.

34. Pursuant to Fed.R.Civ.P. Rule 23(a), (b)(2), and (b)(3), Plaintiff brings this action on behalf of itself and all others similarly situated claiming legal remedies against ALMA LASERS.

35. The prerequisites to class representation pursuant to Rule 23(a) are present in this action as follows:

    a. Numerosity. The members of the Class are so numerous and geographically diverse within the State of Florida that joinder of all of them is impracticable. Upon information and belief, Plaintiff estimates that approximately twenty-five (25) Accent XL machines were sold in the State of Florida. Thus, Plaintiff estimates that there will be approximately twenty-five (25) eligible Class members in the State of Florida that can choose to be involved in the case or opt out. This number represents an estimate of the number of consumers of the Accent XL machine in the State of Florida. However, this estimate is made prior to receiving ALMA LASERS' distribution list and contacting other Class members about the case. Therefore, this number is subject to change after discovery.[2]

    b. Commonality. There are questions of fact and law common to the claims of the Plaintiff and the members of the Class that predominate over any questions affecting any individual members including, among others, the following questions:

---

[2] There will be many more members of the proposed Class if the definition of the Class is amended in order to include consumers of the Accent XL machine nationally—this will be done if necessary.

CASE NO. 1:11-cv-21396

    i.  Whether the Accent XL machine was supplied by ALMA LASERS;

    ii.  Whether the Accent XL machine was able to or has performed as promised by ALMA LASERS;

    iii.  Whether ALMA LASERS falsely advertised as to the efficacy of the Accent XL machine and as to the results of using the machine;

    iv.  Whether ALMA LASERS is in violation of FDUPTA in falsely advertising the Accent XL machine by misleading customers as to the efficacy of the machine and as to the results of using the machine; and

    v.  Whether ALMA LASERS caused damages to members of the Class who purchased the Accent XL machine.

c.  Typicality. Plaintiff's claims are typical of the claims of the Class members it represents as it has suffered damages in the same manner as the Class members. Plaintiff, like the other members of the proposed Class, purchased the Accent XL machine from ALMA LASERS. The legal theories asserted by Plaintiff are the same as the legal theories that would be advanced by the Class members it represents. Plaintiff and the other members of the proposed Class seek identical remedies under the same legal theories, and there is no antagonism or material factual variation between Plaintiff's claims and those of the Class.

d.  Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiff is willing and able to prosecute this action on behalf of the Class, and Plaintiff has retained competent counsel experienced in complex litigation.

CASE NO. 1:11-cv-21396

36. Fed.R.Civ.P. 23(b)(2). ALMA LASERS acted on grounds generally applicable to Plaintiff and all other members of the proposed Class, thereby making the relief as requested herein concerning the Class as a whole appropriate.

37. Fed.R.Civ.P. 23(b)(3). Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class.   The predominant issues in this action are whether ALMA LASERS falsely advertised as to the efficacy and the results of its Accent XL machine and whether ALMA LASERS violated FDUPTA. The expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Should individual members be required to bring this action on their own behalf, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties. Class certification under Rule 23 is therefore appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this suit as a class action.

**COUNT 1**
**Violation of the Florida Deceptive & Unfair Trade Practices Act ("FDUPTA")**
**Against ALMA LASERS**

38. Plaintiff adopts and incorporates paragraphs 1 through 37 as if fully set forth herein.

39. Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate;

trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff and Class members are medical cosmetic laser, implant, plastic surgery, cosmetic dentistry, and/or cosmetic dermatology practices or are individuals employed by such practices. Plaintiff has standing to bring this action against ALMA LASERS since it is a consumer as defined by FDUPTA.

40. Florida Statutes Section 501.203(8) defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit activity.

41. The advertising, soliciting, offering, or distributing of the Accent XL machine by ALMA LASERS is "Trade of Commerce" under FDUPTA.

42. Florida Statutes Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

43. ALMA LASERS' acts in providing deceptive advertisements and other written materials and the misleading oral statements of ALMA LASERS' representatives of the Accent XL machine equals deceptive, unconscionable and unfair conduct of ALMA LASERS' trade or commerce pursuant to this statute.

44. The unconscionable, misleading, unfair and deceptive acts and practices of ALMA LASERS as previously described in paragraphs 1 through 37 violate the provisions of FDUPTA, specifically by ALMA LASERS' advertisements and projections that it provides to its consumers, such as: "This revolutionary skin tightening regimen uses advanced radio frequency (RF) technology to treat wrinkles non-invasively. Multiple

CASE NO. 1:11-cv-21396

clinical studies and thousands of satisfied patients have proved the **Accent Your Body** treatment's effectiveness in tightening loose skin, promoting healthy collagen production and improving body contours. Compared to other skin treatment systems, you'll see *noticeable results faster*;" "just one or two treatments can produce good results;" "steady improvement with excellent, long-term skin tightening results;" "no more than three to five treatments at two week intervals required;" "skin to tighten right away, results are immediately visible;" "15 days post treatment (5 weeks/2x/wk). The thickness of the patient's superficial fat has decreased 33 percent and there is a clear demarcation from the deep fat;" "the proforma uses of conservative annual growth rate of: 6%;" etc., as well as misleading before and after pictures and unrealistic projections of the supposed income derived from the use of the Accent XL. (Exhibits "A" through "H").

45. These advertisements, projections, oral statements, and other marketing materials were made to induce the Plaintiff and proposed Class members to sign a contract to purchase the Accent XL machine.

46. Moreover, Florida courts have held that a party's own fraud or other torts cannot be disclaimed in a contract. *Mazzoni Farms v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 312 (Fla. 2000)(citing *Oceanic Villas v. Godson*, 148 Fla. 454 (1941); *Mankap Enter. v. Wells Fargo Alarm Servs.*, 427 So.2d 332, 333-4 (Fla. 3d DCA 1983)(the court noted that the law is well-settled that a party cannot contract against liability for his own fraud in order to exempt him from liability for a tort, and any such exculpatory clauses are **void as against public policy**)); *Galstaldi v. Sunvest Communities USA, LLC*, 637 F.Supp.2d 1045, 1063 (S.D. Fla. 2009). Even valid disclaimer clauses will not bar claims based on fraud unless those clauses **expressly and specifically address and contradict**

14

CASE NO. 1:11-cv-21396

the misrepresentations on which the claims are based. *Indulgence Yacht Charters v. Ardell*, 2008 WL 4346749 * 7 (S.D.Fla. 2008) (the court held that the alleged misrepresentations do not contradict the terms of the Agreement despite the general release within the Agreement). Unless the claims are **directly and fully rebutted by express evidence in a governing written contract**, courts do not dismiss fraud or FDUPTA claims. *Id.* (citing *Garcia v. Santa Maria Resort*, 528 F.Supp.2d 1283, 1296 (S.D.Fla. 2007); *Rosa v. Amoco Oil Co.*, 262 F.Supp.2d 1364, 1368-9 (S.D.Fla. 2003); and *Zlotnick v. Premier Sales Group*, 431 F.Supp.2d 1290, 1295 (S.D.Fla. 2006)).

47. As such, it is clear that the Contract does exactly what Florida courts have ruled against by attempting to improperly disclaim any liability for tort and all other claims and limits Plaintiff's important remedial rights. Thus, ALMA LASERS' "limited warranties" and disclaimers contained within their agreements which disclaimed all "representations and warranties, express or implied, written or oral" as well as ALMA LASERS' disclaimer of any tort and statutory liability are unconscionable, against the law, and void as against public policy. (Exhibit "J").

48. Furthermore, as a direct and proximate cause of ALMA LASERS' acts, Plaintiff and all other proposed Class members have incurred economic damages and are entitled to recover monetary damages for the purchase-price of the Accent XL machine and any costs in maintaining the machine.

49. Also, as a direct and proximate cause of ALMA LASERS' acts, Plaintiff and all other proposed Class members have incurred and will continue to incur incidental and consequential damages and are entitled to recover such damages.

CASE NO. 1:11-cv-21396

50. Plaintiff has suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

51. Plaintiff is entitled to recover its reasonable attorney's fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

52. Pursuant to Florida law, Plaintiff respectfully asks this Court to award Plaintiff injunctive relief, actual and punitive damages, and reasonable attorney's fees and costs.

**WHEREFORE,** Plaintiff SOLUTION Z hereby demands injunctive relief, actual and punitive damages, and reasonable attorney's fees and costs against Defendant ALMA LASERS, and any other relief that this Court deems just and proper.

**COUNT 2**
**False Advertising**

53. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

54. Defendant ALMA LASERS' advertisements and marketing materials and representations (described more fully in paragraphs 20 through 25) created false and unjustified expectations when it promoted the Accent XL machine by offering remarkable expected projections and intended results before and after pictures, statements it made on its website and brochure and by the sales representatives as to the efficacy of the Accent XL machine. (Exhibits "A" through "H").

55. Moreover, as previously discussed in paragraphs 46 and 47, ALMA LASERS' "limited warranties" and disclaimers contained within their agreements which disclaimed all "representations and warranties, express or implied, written or oral" as well as ALMA

16

CASE NO. 1:11-cv-21396

LASERS' disclaimer of any tort and statutory liability[3] are unconscionable, against the law, and void, and are irrelevant as to Plaintiff's reliance on the oral and written representations made by ALMA LASERS to its consumers, the Plaintiff and the proposed Class members.

56. The statements, advertisements, and before and after pictures described in paragraphs 1 through 37, both oral and written, that were provided by ALMA LASERS to Plaintiff and Class members are sufficiently false, deceitful and misleading in order to justify a claim for false advertisement under Florida law. (See Exhibits "A" through "H").

57. These advertisements, projections, oral statements, and other marketing materials were made to induce the Plaintiff and proposed Class members to sign a contract to purchase the Accent XL machine.

58. As a direct and proximate cause of ALMA LASERS' acts, Plaintiff and all other proposed Class members have incurred economic damages and are entitled to recover monetary damages for the purchase-price of the Accent XL machine and any costs in maintaining the machine.

59. Also, as a direct and proximate cause of ALMA LASERS' acts, Plaintiff and all other proposed Class members have incurred and will continue to incur incidental and consequential damages and are entitled to recover such damages.

60. Plaintiff has suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

61. Plaintiff is entitled to recover its reasonable attorney's fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

---

[3] Exhibit "J".

CASE NO. 1:11-cv-21396

62. Pursuant to Florida law, Plaintiff respectfully asks this Court to award Plaintiff injunctive relief, actual and punitive damages, and reasonable attorney's fees and costs.

**WHEREFORE,** Plaintiff SOLUTION Z hereby demands injunctive relief, actual and punitive damages, and reasonable attorney's fees and costs against Defendant ALMA LASERS, and any other relief that this Court deems just and proper.

## COUNT 3
## Fraud/Misrepresentation in Tort Claim

63. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

64. Defendant ALMA LASERS intended to market and sell the Accent XL machine to consumers.

65. Defendant ALMA LASERS owed a duty of care to Plaintiff and all of its other consumers to be truthful as to the products it sells.

66. Defendant ALMA LASERS breached its duty of care when it misrepresented material facts described more fully in paragraphs 1 through 37, such as the effectiveness of the Accent XL machine, to its consumers through advertisements, oral and written statements, before treatment and after treatment pictures, and projections of income derived from the use of the Accent XL machine. (Exhibits "A" through "H").

67. Again, as previously discussed above, ALMA LASERS' "limited warranties" and disclaimers contained within their agreements which disclaimed all "representations and warranties, express or implied, written or oral" as well as ALMA LASERS' disclaimer of any tort and statutory liability[4] are unconscionable, against the law, and void, and are

---

[4] Exhibit "J".

CASE NO. 1:11-cv-21396

irrelevant as to Plaintiff's reliance on the oral and written representations made by

ALMA LASERS to its consumers, the Plaintiff and the proposed Class members.

68. These advertisements, projections, oral statements, and other marketing materials and misrepresentations were made to induce the Plaintiff and proposed Class members to sign a contract to purchase the Accent XL machine. (See Exhibits "A" through "H").

69. But for Defendant ALMA LASERS' misrepresentations of the effectiveness of the Accent XL machine, Plaintiff would not have purchased the machine and used it on its patients.

70. Defendant ALMA LASERS' misrepresentations is the proximate cause of Plaintiff's damages since Plaintiff and the proposed Class members would not have purchased the Accent XL machine and would not have had dissatisfied patients had the Plaintiff not purchased and used the Accent XL machine.

71. Thus, Plaintiff and Class members are entitled compensatory damages. In addition, they are entitled punitive damages as misrepresentation of this nature constitutes egregious behavior.

**WHEREFORE,** Plaintiff SOLUTION Z hereby demands injunctive relief, actual and punitive damages, and reasonable attorney's fees and costs against Defendant ALMA LASERS, and any other relief that this Court deems just and proper.

<u>**COUNT 4**</u>
<u>**Breach of Contract Claim**</u>

72. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

CASE NO. 1:11-cv-21396

73. Defendant ALMA LASERS intended to market and sell the Accent XL machine to Plaintiff and the proposed Class members.

74. Defendant ALMA LASERS had reason to know that Plaintiff and all Class members would use this machine on their patients.

75. As discussed more fully in paragraphs 1 through 37, Defendant ALMA LASERS misrepresented the effectiveness of the Accent XL machine in statements it made to Plaintiff and other consumers, in brochures, and by providing misleading before and after pictures.

76. As a result, Plaintiff and the proposed Class members entered into contracts with Defendant ALMA LASERS for the purchase of the Accent XL machine in exchange for payment of approximately One Hundred Nine Thousand Seven Hundred Dollars ($109,700.00) up to One Hundred Thirty Thousand Dollars ($130,000.00). (Exhibit "I").

77. Here, the basic terms that are written on the invoice are for Plaintiff to purchase the Accent XL machine from Defendant for $109,700.00 on April 2, 2008, with a 10% deposit to be paid at that time and the balance to be paid in full upon delivery. *Id.* The contract does not mention these terms that are listed on the invoice.

78. Essential material terms of the contract, including, the Parties involved, what the machine is and what it is intended to do, the price of the machine, and instructions for payment and shipment are not contained within the written contract nor its contradicting written counterparts. (Exhibit "I" and "J"). As such, the contract is not fully integrated, clear and unambiguous, and involves written as well as oral representations and promises to Plaintiff and the proposed Class members, which indicate that the contract was procured by fraud, and therefore, parol evidence, including all oral and written representations that

CASE NO. 1:11-cv-21396

are not contained within the written contract itself, should be considered as part of the terms of the contract for the purchase of the Accent XL machine when evaluating Plaintiff's claims and the contract's terms in order to determine the terms of the contract in its entirety as the written contract is incomplete and ambiguous. *Acquisition Corp. of Am. v. Fed. Dep.Ins.*, 760 F.Supp. 1558, 1561-2 (S.D.Fla. 1991).[5]

79. Thus, the information within the advertising and marketing materials and oral statements by representatives are part of the terms that were bargained for between the Parties and are part of the contract. Courts have continuously held that advertisements, manuals, brochures, etc., which reference specifications and the capacity of a particular machine amount to more than mere puffing or opinion and constitute express warranties of fact as set forth in the materials. *Start Farm Ins. v. Nu Prime Roll-A-Way of Miami*, 557 So.2d 107, 108 (Fla. 3d DCA 1990). Additionally, such affirmations made during a bargain become a basis of the bargain unless clear affirmative proof shows otherwise, and further, the burden is on the seller, Defendant, to establish that the affirmations contained in the brochures and materials were not a basis of the bargain.

80. Here, the information contained within the manuals, advertisements, and other materials attached hereto, and as more fully described in paragraphs 1 through 37, which contain descriptions about the efficacy of the Accent XL machine, the income projections, etc., shall constitute express warranties of fact that was part of the bargained for agreement ALMA LASERS had between Plaintiff and the proposed Class members. (Exhibits "A" through "H").

---

[5] Illinois courts have similar outcomes. For example, in *Blankenship v. Northtown Ford*, 420 N.E.2d 167, 171 (Ill. 4th DCA 1981), the court quoted the UCC and stated that the whole purpose of the law is to determine what it is the seller has agreed to sell, and 'a contract is normally a contract for a sale of something describable and described.' The court held that otherwise valid disclaimers do not apply to a contract where its terms are ambiguous or missing.

CASE NO. 1:11-cv-21396

81. In this case, Defendant, by its own admission, is a global leader in developing and

manufacturing laser, light-based, radiofrequency and ultrasound devices for aesthetic and

medical applications, including the Accent XL machine. (Exhibits "A" through "H").

Thus, when entering into a Contract, Defendant had the advantage of unequal bargaining

power and it wrongfully exercised this bargaining power and influence in order to receive

commercial benefits derived from the sale of this machine. Additionally, Plaintiff did not

understand the terms of its transaction with Defendant as Defendant provided Plaintiff

with several materials, including a Purchase Order, manuals, brochures, projections,

pictures, etc, which referenced warranties and terms provided in other materials. For

instance, the projections given to Plaintiff provided a disclaimer followed by this

statement: "**other than the written warranties that accompany the Accent XL system,**

**and contained in the Quotation.**" (Exhibit "H"). The first line of the Purchase Order

also states "**All specifications are according to ALMA LASERS Lasers, Inc. printed**

**brochures,**" and elsewhere on the Order states "the undersigned buyer expressly

acknowledges and agrees that the purchase of a system pursuant to this purchase order **is**

**in accordance** with ALMA LASERS' Terms and Conditions of Sale and ALMA

LASERS' Limited Warranty Agreement." (Exhibit "I"). With all of the references to

different specifications and warranties Defendant provided which promise certain results,

it is near impossible for Plaintiff or any consumer to understand Defendant's alleged

version of what the terms or exact warranties—or lack thereof—are. If the Contract is to

be construed as providing Plaintiff with no warranties and limiting Plaintiff's statutory

and remedial rights—it is clear that this Contract was made on a take-it-or-leave-it basis,

and thus, is procedurally unconscionable.

CASE NO. 1:11-cv-21396

82. Also, as previously discussed and discussed more fully herein, ALMA LASERS'

"limited warranties" and disclaimers contained within their agreements which disclaimed

all "representations and warranties, express or implied, written or oral" as well as ALMA

LASERS' disclaimer of any tort and statutory liability[6] are unconscionable, against the

law, and void, and are irrelevant as to Plaintiff's reliance on the oral and written

representations made by ALMA LASERS to its consumers, the Plaintiff and the proposed

Class members. Limitations and disclaimers of implied warranties are only authorized if

said limitations are made a part of the bargain between the parties, are reasonably

consistent with any express warranties made, are in writing and are conspicuous, and are

not unconscionable. Fla. Stat. §§672.302, .316, .719; *Monsanto Agr. Prod. v. Edenfield*,

426 So.2d 574, 576-7 (Fla. 1st DCA 1983)(the court noted that a disclaimer appearing in

small print in the 6th paragraph of the contract was insufficient and the defendant must

prove that the disclaimer was in fact a part of the contract, rather than an extraneous

matter within a bulk of materials handed to buyer at the time of purchase). Here, of the

several materials given to Plaintiff, the 19th paragraph of the Terms and Conditions on the

bottom of page 4 provides, in small font:

Any description of the Products, whether in writing or made orally by Seller or Seller's
agents, specifications, samples, models, demonstration units, bulletins, drawings,
diagrams, engineering sheets or similar materials used in connection with Buyer's order
are for the sole purpose of identifying the Products and shall not be construed as an
express warranty. Any suggestions by Seller or Seller's agents regarding use, application
or suitability of the Products shall not be construed as an express warranty unless
confirmed to be such in writing by Seller.

(Exhibit "J") (emphasis added). Not only is this provision inconspicuous, but it is

unconscionable to imply these materials are not express warranties by the Defendant,

---

[6] Exhibit "J".

CASE NO. 1:11-cv-21396

since it in essence confirmed the warranties that were created by these written materials

(as previously explained) by providing them to Plaintiff when conducting the sale.

Further, Defendant's Contract also states:

**ALMA LASERS SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL OR CONTINGENT DAMAGES WHATSOEVER, AND ALMA LASERS HEREBY DISCLAIMS ANY AND ALL SUCH DAMAGES.** Buyer shall indemnify ALMA LASERS against any and all losses, liabilities, damages and expenses (including, without limitation, attorneys' fees and other costs of defending any action)

*Id.* (emphasis added). This attempt to limit Plaintiff's remedial rights is substantively

unconscionable. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135, 1141-2 (11th

Cir. 2010) (a contract that frustrates the remedial nature of a consumer protection statute

may be void as a matter of law); *Holt*, 862 So.2d at 90 (§501.2105 provides for prevailing

party's attorneys' fees for FDUPTA violations). Substantive unconscionability focuses on

the terms of the agreement itself and whether the terms of the contract are unreasonable

and unfair. *Pendergast*, 592 F.3d at 1139. An indicator of substantive unconscionability

is that the agreement requires the customers to give up legal remedies. *Id.* at 1140 (citing

*Powertel, Inc. v. Bexley*, 743 So.2d 570, 576-577 (Fla. 1st DCA 1999), the court held that

an agreement that limited the plaintiff to actual damages was unconscionable because it

forced plaintiff to "'waive important statutory remedies' (such as those granted under

FDUPTA) and 'effectively insulat[ing] Powertel from liability under state consumer

laws'").

83. In addition, Florida courts have repeatedly held that limited warranty provisions do not

operate to preclude recovery on the basis of implied warranty where the product was

unsuitable for its intended use. *Monsanto*, 426 So.2d at 576 (citing *Manheim v. Ford

Motor Co.*, 201 So.2d 440, 442 (Fla. 1967)). Any attempt to disclaim all warranties,

CASE NO. 1:11-cv-21396

whether express or implied, is invalid as unconscionable clauses or contracts are

prohibited. *Id.* at 577. Also, federal law prohibits a supplier from disclaiming any

implied warranty to a consumer with respect to a consumer product if such supplier

makes any written warranties with respect to that product, and any disclaimers made in

violation of this Magnuson-Moss Warranty Act shall be ineffective for purposes of

federal and state law. 15 U.S.C.A. §2308; *Parsons v. Motor Homes of Am.*, 465 So.2d

1285, 1290 (Fla. 1st DCA 1985). Furthermore, a contract clause stating that all

agreements were contained in the writing does not operate to bar recovery under a

warranty theory. *State Farm*, 557 So.2d at 109 (citing *Manheim*, 201 So.2d at 442).

84. As such, for all of the reasons set forth, Plaintiff is not precluded in bringing this cause of

action despite Defendant's disclaimer and limited warranty contained within the Contract

because the terms of the limited warranty and disclaimers are unconscionable as a matter

of law and should be void, and the advertisements and other marketing materials should

be considered when determining the terms of the contract.

85. Plaintiff and Class members justifiably relied on ALMA LASERS' written and oral

representation as to the efficacy of the machine it was selling as it is a global company

that provides several devices for different medical or aesthetic needs when entering into

the Contract, and as a result of their reliance on the information and supposed science

obtained, Plaintiff and Class Members purchased the Accent XL from Defendant for the

purpose of using the machine in their medical practices expecting to tighten their

patients' skin significantly in a short time as intended and as Defendant promised.

86. However, this machine cannot scientifically create or effect collagen and the machine

itself is a fraud, irrespective of its intent. In 2008, Defendant extensively advertised and

CASE NO. 1:11-cv-21396

promoted its new Accent XL machine to consumers around the world and used deceptive

pictures, projections and statements which promised results that Plaintiff later finds out

by experience and inquiry are not achievable.

87. Simply put, the Contract provided for a machine that tightens and firms skin to a

significant degree, and the machine that was provided is incapable of achieving these

results that were contracted and bargained for.

88. In addition, Plaintiff sought service, repair and replacement of the Accent XL from

ALMA LASERS, but it was to no avail.

89. Plaintiff also requested to look at Defendant's clinical studies and the results of the

Accent XL machine, and was subsequently told that these studies were unavailable

before Defendant finally provided them to the Plaintiff. (Exhibit "K").

90. ALMA LASERS breached its contract with Plaintiff and the proposed Class members by

selling and providing a machine that cannot perform any of the functions for which it was

intended, and cannot offer the results contracted for, and further, by failing to supply the

clinical studies Plaintiff twice requested to examine.

91. Plaintiff and Class members suffered incidental and consequential damages due to

ALMA LASERS' misrepresentations.

**WHEREFORE,** Plaintiff SOLUTION Z hereby demands injunctive relief, actual and

punitive damages, and reasonable attorney's fees and costs against Defendant ALMA

LASERS, and any other relief that this Court deems just and proper.

CASE NO. 1:11-cv-21396

## COUNT 5
## Breach of Express Warranty

92. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 37 as if fully

set forth herein.

93. Fla.Stat. §672.313 provides in relevant part:

(1) Express warranties by the seller are created as follows:
   a. Any affirmation of fact or promise made by the seller to the buyer which
      relates to the goods and becomes part of the basis of the bargain creates an
      express warranty that the goods shall conform to the affirmation or promise;
   b. Any description of the goods which is made part of the basis of the bargain
      creates an express warranty that the goods shall conform to the description;
(2) It is not necessary to the creation of an express warranty that the seller use formal
    words such as "warrant" or "guarantee" or that he have a specific intention to make a
    warranty.

94. Also, Florida and Illinois courts have held that a seller's representations in

advertisements, catalogues, and the like become a part of the contract of sale and

constitute an express warranty for breach which the seller will be liable in damages to

one who, in making the purchase, relies thereon to his or her injury. *Alan Wood Steel Co.*

*v. Capital Equipment Enterprises*, 349 N.E.2d 627, 632 (Ill. 1st DCA 1976); *Manheim*,

201 So.2d at 442; *Start Farm*, 557 So.2d at 108 (citing *Drier v. Perfection*, 259 N.W.2d

496 (S.D. 1977) (press manufacturer's brochure referring to the specifications and

capacity of a particular press was more than mere puffing or opinion and constituted

express warranties of fact as set forth in brochure)).[7]

95. Here, Defendant ALMA LASERS supplied Plaintiff and proposed Class members with

several materials and made several representations as described more fully in paragraphs

---

[7] *Crest Container, v. R.H. Bishop*, 445 N.E.2d 19, 24 (Ill. 5th DCA 1982)(the court cited the UCC Comment 5, at 220 and stated "it is clear that documents and brochures may constitute express warranties...**such affirmations made during a bargain become a basis of the bargain unless clear affirmative proof shows otherwise**," and noted that **the burden was on the seller, defendant,** to establish that the affirmation contained in a brochure was not a basis of the bargain); *Wheeler v. Sunbelt Tool*, 537 N.E.2d 1332, 1341 (Ill. 4th DCA 1989).

1 through 37, which created express warranties that should be considered as part of the Contract. (Exhibits "A" through "H").

96. These advertisements, projections, oral statements, and other marketing materials were made to induce the Plaintiff and proposed Class members to sign a contract to purchase the Accent XL machine.

97. Moreover, as previously discussed, ALMA LASERS' "limited warranties" and disclaimers contained within their agreements which disclaimed all "representations and warranties, express or implied, written or oral" as well as ALMA LASERS' disclaimer of any tort and statutory liability[8] are unconscionable, against the law, and void, and are irrelevant as to Plaintiff's reliance on the oral and written representations made by ALMA LASERS to its consumers, the Plaintiff and the proposed Class members.

98. Plaintiff and the proposed Class members justifiably reasonably relied on the express warranties made orally or in writing within ALMA LASERS' advertisements and other marketing materials, and further, but for Defendant ALMA LASERS' representations of the effectiveness of the Accent XL machine, Plaintiff would not have purchased the machine and used it on its patients.

99. Defendant ALMA LASERS' breach of express warranties is the proximate cause of Plaintiff's damages since Plaintiff and the proposed Class members would not have purchased the Accent XL machine and would not have had dissatisfied patients had the Plaintiff not purchased and used the Accent XL machine.

100.    Plaintiff and Class members suffered incidental and consequential damages due to ALMA LASERS' breach of express warranties.

---

[8] Exhibit "J".

CASE NO. 1:11-cv-21396

101.     Thus, Plaintiff and Class members are entitled compensatory damages, including

incidental and consequential damages.

**WHEREFORE,** Plaintiff SOLUTION Z hereby demands injunctive relief, actual and

punitive damages, and reasonable attorney's fees and costs against Defendant ALMA

LASERS, and any other relief that this Court deems just and proper.

## COUNT 6
### Breach of Implied Warranty of Merchantability

102.     Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 37 as

if fully set forth herein.

103.     The law imposes certain implied warranties, including the implied warranties of

merchantability and fitness for a particular purpose and implied warranties arising from

course of dealing or usage of trade for all contracts dealing with the purchase of goods

from a merchant. UCC, Chapters 671-679, Fla.Stat.

104.     "Goods" are all things movable at the time of a contract for sale, and a

"merchant" is a party that deals in goods of the kind, or otherwise holds itself out by

occupation as having knowledge or skill peculiar to the practices or goods involved in the

transaction or to which the knowledge or skill may be attributed by the person's

employment. UCC §2-103(1)(k); §2-104(1).

105.     Defendant is a merchant of the machine here; thus, implied warranties are

imposed unless properly excluded, and as previously discussed, these implied warranties

were not properly excluded.

106.     The minimum standards for goods to be merchantable are listed in Fla.Stat.

§672.314(2), which states in relevant part that goods must at least:

CASE NO. 1:11-cv-21396

(a) Pass without objection in the trade under the contract description;...

(c) Are fit for the ordinary purposes for which such goods are used' and...

(f) Conform to the promises or affirmations of fact made on the container or label if any.

107.    In this case, not only has the Plaintiff and other consumers voiced their objections as to the efficacy of the machine, but the Accent XL machine is scientifically incapable of performing as promised and is not fit for its intended ordinary purpose of tightening skin to certain extremes.

108.    Plaintiff and the proposed Class members justifiably reasonably relied on the merchantability of the Accent XL machine, and further, but for their reliance on the merchantability of the Accent XL machine, the Plaintiff and the proposed Class members would not have purchased the machine and used it on its patients.

109.    Defendant ALMA LASERS' breach of implied warranties of merchantability is the proximate cause of Plaintiff's damages since Plaintiff and the proposed Class members would not have purchased the Accent XL machine and would not have had dissatisfied patients had the Plaintiff not purchased and used the Accent XL machine if it knew the Accent XL machine was not merchantable.

110.    Plaintiff and Class members suffered incidental and consequential damages due to ALMA LASERS' breach of these implied warranties.

111.    Thus, Plaintiff and Class members are entitled compensatory damages, including incidental and consequential damages.

**WHEREFORE,** Plaintiff SOLUTION Z hereby demands injunctive relief, actual and punitive damages, and reasonable attorney's fees and costs against Defendant ALMA LASERS, and any other relief that this Court deems just and proper.

30

CASE NO. 1:11-cv-21396

## COUNT 7
### Breach of Implied Warranty of Fitness for a Particular Purpose

112.    Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 37 as if fully set forth herein.

113.    The law imposes certain implied warranties, including the implied warranties of merchantability and fitness for a particular purpose and implied warranties arising from course of dealing or usage of trade for all contracts dealing with the purchase of goods from a merchant. UCC, Chapters 671-679, Fla.Stat.

114.    "Goods" are all things movable at the time of a contract for sale, and a "merchant" is a party that deals in goods of the kind, or otherwise holds itself out by occupation as having knowledge or skill peculiar to the practices or goods involved in the transaction or to which the knowledge or skill may be attributed by the person's employment. UCC §2-103(1)(k); §2-104(1).

115.    Defendant is a seller and merchant of the Accent XL machine here; thus, implied warranties are imposed as they have not been properly excluded as discussed above.

116.    Moreover, Fla.Stat. §672.315 provides an implied warranty that the goods shall be fit for a particular purpose when the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.

117.    Defendant ALMA LASERS had reason to know that Plaintiff and all Class members would use this machine on their patients for the particular purpose of tightening and firming the skin in the manner and degree that ALMA LASERS marketed the Accent XL machine, and moreover, Defendant ALMA LASERS, as the lead global developer,

CASE NO. 1:11-cv-21396

manufacturer, and provider of laser radiofrequency devices for aesthetic and medical applications, had reason to know that Plaintiff and the proposed Class members relied on ALMA LASERS' skill and judgment to furnish the suitable goods it intended and marketed.

118.     Plaintiff and the proposed Class members justifiably and reasonably relied on the Accent XL machine's fitness for the particular purpose of tightening and firming the skin non-invasively in the manner and degree that ALMA LASERS' intended the machine to be used and that which it represented to its consumers, and further, but for their reliance on its fitness for the intended purpose of tightening and firming the skin to a particular degree as intended, Plaintiff and the proposed Class members would not have purchased the machine and used it on its patients.

119.     In this case, not only has the Plaintiff and other consumers voiced their objections as to the efficacy of the machine, but the Accent XL machine is scientifically incapable of performing as promised and is not fit for its intended ordinary purpose of tightening skin to the certain extremes ALMA LASERS represented.

120.     Defendant ALMA LASERS' breach of implied warranty of fitness for a particular purpose is the proximate cause of Plaintiff's damages since Plaintiff and the proposed Class members would not have purchased the Accent XL machine and would not have had dissatisfied patients had the Plaintiff not purchased and used the Accent XL machine if it knew the Accent XL machine does not perform as it was intended to perform.

121.     Plaintiff and Class members suffered incidental and consequential damages due to ALMA LASERS' breach of the implied warranty of fitness for a particular use.

32

CASE NO. 1:11-cv-21396

122.     Thus, Plaintiff and Class members are entitled compensatory damages, including incidental and consequential damages.

**WHEREFORE,** Plaintiff SOLUTION Z hereby demands injunctive relief, actual and punitive damages, and reasonable attorney's fees and costs against Defendant ALMA LASERS, and any other relief that this Court deems just and proper.

<u>**Equitable and Injunctive Relief**</u>

123.     Plaintiff adopts and restates paragraphs 1 through 37 as if fully set forth herein.

124.     Plaintiff and other Class members will continue to suffer irreparable harm if the Court does not render injunctive relief set forth herein.

125.     Plaintiff demands injunctive relief and further, that ALMA LASERS be ordered to cease and desist from misrepresenting to Plaintiff and the general public that the Accent XL machine can do more to improve the skin than what it actually does.

**WHEREFORE,** Plaintiff and the Class respectfully request a judgment certifying this matter as a class action, judgment for allowable damages, taxable costs, prejudgment interest, attorney's fees pursuant to 501.205, Fla. Stat., any exemplary or punitive damages this Court deems appropriate under 15 U.S.C. §57b, and any other relief this Court deems just and proper against ALMA LASERS.


<u>**Demand for Jury Trial**</u>

Plaintiff, individually and on behalf of all Class members, demand a trial by jury on all issues triable as of right by a jury.

CASE NO. 1:11-cv-21396

Respectfully submitted,
KURZBAN KURZBAN WEINGER,
TETZELI & PRATT, P.A.
2650 SW 27th Avenue, 2nd Floor
Miami, Florida  33133
Telephone:  (305) 444-0060

By: /s/Jed Kurzban
      JED KURZBAN, ESQ.
      Florida Bar No. 81353

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this 14th day of February, 2012, we electronically filed

the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the

foregoing document is being served on this day on all counsel of record or pro se parties

identified on the attached Service List in the manner specified, either via transmission of

Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for

those counsel or parties who are not authorized to receive electronic Notices of Filing.

Respectfully submitted,
KURZBAN KURZBAN WEINGER
TETZELI and PRATT, P.A.
Attorneys for Plaintiff
2650 S.W. 27th Avenue, 2nd Floor
Miami, Florida 33133
(305) 444-0060

By: /s/Jed Kurzban
      JED KURZBAN, ESQ.
      Florida Bar No. 81353

**SERVICE LIST via CM/ECF**
BARRY POSTMAN, ESQUIRE
JONATHAN VINE, ESQUIRE
RACHEL BEIGE, ESQUIRE
Cole, Scott & Kissane, P.A.
1645 Palm Beach Lakes Blvd., 2nd floor
West Palm Beach, Florida 33401